## UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 13 B 01162 |
| | ) | |
| MICHAEL TOLOMEO, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |
| | ) | |
| BCL-SHEFFIELD LLC and | ) | Adversary Case No. 14-00802 |
| BCL-BURR RIDGE LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GEMINI INTERNATIONAL, INC., | ) | |
| AMERICAN GOURMET | ) | |
| SPECIALTIES, LTD., TOLFLEX | ) | |
| ENGINEERING SYSTEMS CO., and | ) | |
| LAURA TOLOMEO, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court on the motion of BCL-Sheffield LLC and BCL-Burr

Ridge LLC (the "Plaintiffs") for judgment on the pleadings with respect to a two-count adversary

complaint filed by the Plaintiffs against Gemini International, Inc., American Gourmet

Specialties, Ltd., Tolflex Engineering Systems Co., and Laura Tolomeo (the "Defendants"). In

Count I, the Plaintiffs seek a declaration that the Defendants' assets are property of the

bankruptcy estate of Michael Tolomeo (the "Debtor"), subject to administration by the Plaintiffs,

based on a determination that the Defendants are alter egos of the Debtor. In Count II, the

Plaintiffs ask the Court to pierce the corporate veil of the Defendants and direct turnover of the

Defendants' assets to the chapter 7 trustee pursuant to 11 U.S.C. § 542.[1]  For the reasons stated

below, the Court finds that the material facts alleged by the Plaintiffs are not in dispute and that

the relief sought by the Plaintiffs with respect to the issues of alter ego and piercing the corporate

veil is warranted as a matter of law.  Accordingly, it is recommended that the district court enter

judgment on the pleadings on those issues in the Plaintiffs' favor.[2]

## JURISDICTION

The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(b) and Internal

Operating Procedure 15(a) of the District Court for the Northern District of Illinois.[3]  Section

1334(b) confers jurisdiction over matters arising under title 11, arising in a case under title 11, or

related to a case under title 11.  28 U.S.C. § 1334(b); *see Stern v. Marshall*, 131 S. Ct. 2594,

2603 (2011).

"The manner in which a bankruptcy judge may act" in a proceeding "depends on the type

of proceeding involved." *Stern*, 131 S. Ct. at 2603.  A bankruptcy judge may enter a final

judgment in any core proceeding arising under title 11 or arising in a case under title 11, 28

U.S.C. § 157(b)(1), as long as there is no "constitutional impediment," *Enesco Grp., Inc. v.*

*Campanaro (In re Enesco Grp., Inc.)*, Nos. 07 B 565, 11 A 403, 2013 WL 4045756, at *6 n.6

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure

[2] According to the prayer in their motion for judgment on the pleadings, the Plaintiffs also seek authorization to administer and liquidate the Defendants' assets, release from any and all causes of action that might be claimed by the Defendants, and extension of the automatic stay as to the Defendants and their assets, enjoining all persons or entities from interfering with the Plaintiffs' administration of these assets.  Because the Plaintiffs' motion focuses solely on the substantive issues of alter ego and veil-piercing, the Court limits its recommendation to the Plaintiffs' requests regarding those issues.

[3] Although the federal district courts have "original and exclusive jurisdiction" of all cases under the Bankruptcy Code, 28 U.S.C. § 1334(a), they may refer these cases to the bankruptcy judges for their districts, 28 U.S.C. § 157(a).  The United States District Court for the Northern District of Illinois has made such a reference of all of its bankruptcy cases.  N.D. Ill. Internal Operating Procedure 15(a).

(Bankr. N.D. Ill. Aug. 8, 2013) (citing *Stern*, 131 S. Ct. at 2605). In a proceeding "related to" a

bankruptcy case, however, the judge can only propose findings of fact and conclusions of law to

the district court. 28 U.S.C. § 157(c). The district court must enter any final judgment. *Id.* The

only exception is when the parties consent to the entry of judgment by the bankruptcy judge. 28

U.S.C. § 157(c)(2); *see Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1939 (2015).

In this matter, the Defendants deny that the adversary action constitutes a core proceeding

within the meaning of 28 U.S.C. § 157(b).[4] (*See* Answer ¶ 3.) Although turnover orders are

statutorily defined as core matters under 28 U.S.C. § 157(b)(2)(E), the Plaintiffs' turnover action

in this case is predicated upon alter ego and veil-piercing theories of liability under Illinois law.

Under *Stern*, alter ego and veil-piercing are not issues that "stem[ ] from the bankruptcy itself or

would necessarily be resolved in the claims allowance process." *Stern*, 131 S. Ct. at 2618. Nor

have the Defendants consented to the adjudication of these issues against them by this Court. In

fact, at a hearing on June 10, 2015, the Defendants explicitly stated that they do *not* consent to

entry of a final judgment by the bankruptcy court. The Plaintiffs do not otherwise argue that their

alter ego and veil-piercing claims are core matters that constitutionally may be adjudicated

directly by this Court. Accordingly, the Court will issue proposed findings of fact and

conclusions of law on the questions of alter ego and veil-piercing for de novo review by the

district court. *See* 28 U.S.C. § 157(c)(1); Fed. R. Bankr. P. 9033(d). Upon the district court's

entry of a final order adjudicating these issues, the bankruptcy court will then address the

---

[4] The Defendants also deny that the Plaintiffs have standing to bring this action. (*See* Answer ¶ 6.) The question of standing, however, was previously decided by the Court when it considered the issue and ultimately entered an order approving the terms of a settlement agreement between the Plaintiffs and the chapter 7 trustee in this case, Barry A. Chatz (the "Trustee"). Pursuant to the settlement agreement, any potential estate claims and the recovery therefrom were assigned by the Trustee to the Plaintiffs. (*See* Order Approving Settlement at ¶ 4, Case No. 13 B 01162, Docket No. 274.) Thus, the Plaintiffs have standing to bring this adversary proceeding.

Plaintiffs' turnover request under § 542 as appropriate.

## BACKGROUND

The relevant facts are drawn from both the docket and the parties' pleadings and have

been admitted by the Defendants in their answer. Those facts are as follows.

The Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code

on January 11, 2013 (the "Petition Date"). Subsequently, the Debtor's case was converted from

chapter 11 to chapter 7 on September 16, 2013 (the "Conversion Date"), and the Trustee was

appointed shortly thereafter.

Prior to and as of the Petition Date, the Debtor was married to defendant Laura Tolomeo

("Laura").[5]  (*See* Answer ¶ 8.)  The other defendants–Gemini International, Inc. ("Gemini"),

American Gourmet Specialties, Ltd. ("AGS"), and Tolflex Engineering Systems Co. ("Tolflex")

(together, the "Corporate Defendants")–are or once were Illinois corporations owned solely by

Laura. (*See id.* ¶¶ 9, 11-13, 15, 16, 120, 150.)

Gemini is listed as active by the Illinois Secretary of State. (*See id.* ¶ 9.)  In addition to

being Gemini's sole shareholder, Laura is one of two officers of the corporation, the secretary;

the Debtor is Gemini's president. *(See id.* ¶¶ 11, 121, 152.)  The Secretary of State lists Gemini's

business address as the same one for the Debtor and Laura's residence. (*Id.* ¶¶ 123, 153.)

Neither of the two other Corporate Defendants is currently in operation.  AGS was dissolved as

of May 9, 2014, Tolflex as of February 11, 2010. (*See id.* ¶¶ 12, 15, 125, 155.)  The Debtor was

AGS's president prior to dissolution and, in fact, since the corporation's inception. (*See id.* ¶

---

[5] On February 1, 2013, Laura filed a bankruptcy petition under chapter 13, which was subsequently
dismissed for unreasonable delay. (*See* case number 13-04052; *see also* Answer ¶ 7.)  She has not been a co-debtor
in her husband's bankruptcy case at any time.

40.)

Although Laura is, or formerly was, the owner and sole shareholder of the Corporate

Defendants, she has no substantial funds or income of her own. (*See id.* ¶ 55.) According to the

evidence, Laura has had serious health issues for several years and, as a result, has had to rely on

the Debtor, as well as her adult children, in all aspects of her daily life. (*See id.* ¶ 54.) As a

result, instead of Laura controlling the Corporate Defendants, the record establishes that the

Debtor alone has run the businesses of the Corporate Defendants.

The Debtor provided testimony over the course of the bankruptcy case, both at the § 341

meeting and during various Rule 2004 examinations, about the operation of the Corporate

Defendants' businesses, including various transactions that took place among them, and the

Debtor's role and responsibilities in connection with those businesses. Specifically, the

testimony established–and the Defendants do not dispute–the following. At all times, the Debtor

acted as president of both Gemini and AGS. (*See id.* ¶¶ 38, 40.) Gemini previously owned two

commercial properties, one in Chicago and another in Burr Ridge. (*See id.* ¶ 10.) At one time,

AGS was the largest tenant at the Chicago property. (*See id.* ¶ 14.) Gemini charged AGS about

$9,000 per month in rent, and the Debtor was responsible for the collection of that rent. (*See id.*

¶ 49.) At some point prior to the Petition Date, AGS's rent was reduced because AGS was

paying Gemini's expenses in connection with the Burr Ridge property; AGS was also paying the

mortgage on that property. (*See id.* at ¶¶ 10, 51, 52.) Additionally, the Debtor caused Gemini to

enter into a lease with Howich, a related corporation owned and controlled by the Debtor, despite

the fact that Howich had ceased to exist as a separate corporate entity many years before the

execution of the lease. (*See id.* at ¶¶ 75, 76, 81, 124, 154.)

As to the management of the assets of both the Corporate Defendants and the Debtor's

personal assets, AGS and Gemini shared a single checking account at MB Financial Bank (the

"Gemini Account"). (*See id.* ¶ 42.) Gemini Account statements list a number of account holders

at various times, including AGS and Tolflex. (*See id.* ¶ 44.) The Gemini Account was used to

pay bills of Gemini and AGS interchangeably and to pay bills owed by Laura and the Debtor

personally—including mortgage payments on their residence and the funds advanced to the

Debtor's bankruptcy attorney. (*See id.* ¶¶ 46, 63-68.) Additionally, the Debtor and Laura would

sometimes take money from AGS, and they both received payroll checks from AGS, even though

neither of them actually worked for that company. (*See id.* ¶¶ 71, 72.) All of this evidence is

consistent with the Debtor's testimony that he did not have a checking account, savings account,

or credit card in his own name prior to the Petition Date, as well as Laura's statements that she

did not have significant assets or income of her own. (*See id.* ¶¶ 55, 59, 60.)

With respect to the maintenance of company records and documents, the Defendants

admitted that they did not produce any corporate records dated after 2004, despite requests from

the Trustee. (*See id.* ¶¶ 117, 147.) In addition, Gemini failed to file tax returns for a number of

years, including those for tax years 2008 to 2012. (*See id.* ¶¶ 118, 148.)

In January 2013, the Debtor opened two accounts at First Personal Bank, a debtor-in-

possession checking account under his own name (the "DIP Account") and an account under the

name of AGS (the "AGS Account"). (*See id.* ¶¶ 84, 89.) Although he was required to use the

DIP Account for post-petition payments,[6] the Debtor continued to pay personal financial

---

[6] Pursuant to the Operating Reports and Reporting Requirements guidelines promulgated by United States
Trustee, immediately upon the filing of a chapter 11 case, a debtor-in-possession is required to close previous bank
accounts and open one or more accounts designated as debtor-in-possession accounts. *See* www.justice.gov/ust-

obligations from the Gemini Account after the Petition Date and also deposited his Social

Security checks into the Gemini Account. (*See id.* ¶¶ 86, 87.) After the Conversion Date, the

Debtor withdrew nearly all of the funds in the DIP Account and deposited them into either the

Gemini Account or the AGS Account. (*See id.* ¶ 85.) He also deposited paychecks that he

received from AGS into the AGS Account rather that the DIP account he was obligated to use.

(*See id.* ¶ 92.) And even after the AGS Account was established, the Debtor continued to use the

Gemini Account to pay AGS's business expenses. (*See id.* ¶¶ 96, 97.)

On November 26, 2014, the Plaintiffs filed a two-count adversary complaint seeking: (1)

a determination that the Defendants are alter egos of the Debtor and that, as such, all of the

Defendants' assets are assets of the Debtor, subject to administration by the Plaintiffs, and (2) the

entry of an order piercing the corporate veil of the Defendants and directing turnover of the

Defendants' assets to the chapter 7 trustee pursuant to § 542. On February 3, 2015, the

Defendants filed their answer and asserted three affirmative defenses: the Court's lack of subject

matter jurisdiction, the Plaintiffs' lack of standing to pursue the claims at issue, and unclean

hands. In response, the Plaintiffs filed a motion to strike the Defendants' affirmative defenses,

which the Court subsequently granted. The Plaintiffs then filed the instant motion for judgment

on the pleadings. The motion has been fully briefed, and the Court is now ready to issue its

proposed findings of fact and conclusions of law.

## APPLICABLE STANDARD UNDER RULE 12(c)

The Plaintiffs have moved for judgment on the pleadings under Rule 12(c), made

---

regions-r11. Doing so provides a clear line of demarcation between pre-petition and post-petition claims and payments and helps protect against the inadvertent payment of pre-petition claims by preventing banks from honoring checks drawn before the petition date.

applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7012(b).

Under Rule 12(c), judgment on the pleadings may be granted if the movant clearly shows that

there are no material issues of fact in dispute and that the movant is entitled to judgment as a

matter of law. *Nat'l Fid. Life Ins. Co. v. Karaganis*, 811 F.2d 357, 358 (7th Cir. 1987).

In ruling on a motion for judgment on the pleadings, a court must view the facts in the

light most favorable to the nonmoving party but is not bound by that party's legal

characterizations of the facts. *See id.* All uncontested allegations to which the parties have had

an opportunity to respond are taken as true. *Flora v. Home Fed. Sav. & Loan Ass'n*, 685 F.2d

209, 211 (7th Cir. 1982). Although a court generally may not look beyond the pleadings, which

consist of the complaint, the answer, and any written instruments attached as exhibits, *N. Ind.*

*Gun & Outdoor Shows, Inc. v. City of S. Bend.*, 163 F.3d 449, 452 (7th Cir.1998); *see also* Fed.

R. Civ. P. 10(c), a court may take judicial notice of matters of public record, *United States v.*

*Wood*, 925 F.2d 1580, 1581-82 (7th Cir. 1991).

## DISCUSSION

Under Illinois law, "a corporation is a legal entity separate and distinct from its

shareholders, directors and officers, and, generally, from other corporations with which it may be

affiliated." *Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569 (7th Cir. 1985)

(citing *Main Bank of Chi. v. Baker*, 427 N.E.2d 94, 101 (Ill. 1981)). Accordingly, a corporation's

shareholders and other related parties ordinarily are shielded from the liabilities of that

corporation. *Dimmitt & Owens Fin., Inc. v. Superior Sports Prods., Inc.*, 196 F. Supp. 2d 731,

738 (N.D. Ill. 2002) (citing *Spartech Corp. v. Opper*, 890 F.2d 949, 953 (7th Cir. 1989)).

However, a corporation's legal separateness from its shareholders and other related entities may

8

be disregarded, and the veil of limited liability pierced, "whenever limited liability would 'defeat some strong equitable claim.'" *Koch Ref. v. Farmers Union Cent. Exch., Inc.*, 831 F.2d 1339, 1344 (7th Cir. 1987) (quoting *In re Kaiser*, 791 F.2d 73, 75 (7th Cir. 1986)).

Illinois law allows veil-piercing when two separate elements are met: "(1) there must be such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist; and (2) circumstances must be such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Wachovia Secs., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751-52 (7th Cir. 2012) (internal quotations omitted); *see also Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1388-89 (7th Cir. 1994); *Koch*, 831 F.2d at 1345; *Van Dorn*, 753 F.2d at 569-70. "Once the first element of the test is established, *either* the sanctioning of a fraud (intentional wrongdoing) *or* the promotion of injustice . . . will satisfy the second element." *Van Dorn*, 753 F.2d at 570.

The party seeking to set aside the corporate identity of one entity as the alter ego of another bears "the burden of establishing that the corporation was so controlled and manipulated that it had become a mere instrumentality of another, and furthermore, that misuse of the corporate form would sanction a fraud or promote injustice." *Chi. Florsheim Shoe Store Co. v. Cluett, Peabody & Co.*, 826 F.2d 725, 728 (7th Cir. 1987); *see In re Estate of Wallen*, 633 N.E.2d 1350, 1357 (Ill. App. Ct. 1994) ("A party seeking to pierce the corporate veil has the burden of making a substantial showing that one corporation is really a dummy or sham for another[,] and courts will pierce the corporate veil only reluctantly." (internal citation and quotations omitted)).

A.    **Unity of Interest and Ownership**

In determining whether there is sufficient unity of interest and ownership to warrant

piercing of the corporate veil, Illinois courts have considered a number of factors, including:  (a) inadequate capitalization; (b) failure to issue stock; (c) failure to observe corporate formalities; (d) nonpayment of dividends; (e) insolvency of the debtor corporation; (f) nonfunctioning of other officers or directors; (g) absence of corporate records; (h) commingling of funds; (i) diversion of assets from the corporation by or to a shareholder; (j) failure to maintain arm's length relationships among related entities; and (k) the corporation being a mere facade for the operation of the dominant shareholders. *Dimmitt*, 196 F. Supp. 2d at 738 (citing *Jacobson v. Buffalo Rock Shooters Supply, Inc.*, 664 N.E.2d 328, 331 (Ill. App. Ct. 1996)). "[N]o single factor is determinative in deciding whether to disregard a corporate entity." *Id.* (citing *Wallen*, 633 N.E.2d at 1357).

There is ample evidence to establish that many, if not most, of the factors listed above are present in this matter.  That is, the facts set forth in the Plaintiffs' motion sufficiently demonstrate a unity of interest and control such that the separate personalities of the corporations and the Debtor no longer exist.  The Defendants do not dispute those facts.

First, the uncontested evidence shows that the Corporate Defendants were managed and controlled solely by the Debtor, with little or no input from Laura, the sole shareholder of all three Corporate Defendants and a corporate officer of Gemini.  Laura admitted that, as a result of serious health concerns, she has had to rely wholly on the Debtor, as well as her adult children, with respect to all aspects of her daily life.  Consistent with that admission, the Debtor's testimony and the undisputed facts strongly suggest that the Debtor ran the Corporate Defendants' businesses as if they were his own.  As the president of both Gemini and AGS, the Debtor handled the daily operations of the companies.  He was responsible for the collection of

rent from AGS to Gemini. And he had the authority both to enter into contracts on behalf of the Corporate Defendants and to modify the terms of those agreements–sometimes in favor of one Corporate Defendant, to the detriment of another.

Second, the facts admitted by the Defendants conclusively establish that there was extensive commingling of funds between the Debtor and the Defendants. In that regard, the Debtor managed the finances of the Corporate Defendants and his personal finances out of the Gemini Account both before and after the Petition Date, without maintaining separate accounting records. From that single account, the Debtor paid the bills of the various Defendants and his own personal bills and also deposited his Social Security checks into the account. Consistent with his use of the Gemini Account, the Debtor had no bank accounts or credit cards in his own name, and Laura had few assets and little to no income of her own. Additionally, despite the fact the neither Laura nor the Debtor was an employee of AGS, they both received payroll checks from the company and would occasionally "take money" from AGS.

Third, the Debtor consistently failed to maintain arm's length relationships among the Corporate Defendants, himself, and other entities controlled by him and, in fact, conducted some transactions on behalf of or among the Corporate Defendants that were legally questionable. On one occasion, for example, the Debtor caused Gemini to lease property to AGS and later modified the terms of the lease such that AGS was responsible for paying for Gemini's financial obligations. On another occasion, the Debtor caused Gemini to enter into a lease with another related corporation controlled by the Debtor, despite the fact that that corporation had been dissolved years before the execution of the lease.

Finally, the undisputed facts demonstrate that none of the Corporate Defendants complied

with corporate formalities or adequately maintained corporate records. As discussed above, the

Debtor appeared to run the Corporate Defendants' affairs as he pleased, without accountability to

or input from others. Although there is no evidence that Gemini was being operated as an at-

home business, the Illinois Secretary of State lists Gemini's business address as the address for

the Debtor and Laura's residence. Further, there is a conspicuous absence of corporate records in

this case. There is no evidence of a stock ledger or minutes from corporate meetings, the latter

raising the question of whether such meetings ever took place. And there is no evidence of

recent tax returns, because Gemini failed to file those returns for several years, from 2008 to

2012. In fact, there is no evidence of *any* corporate records dated after 2004, the Defendants

themselves admitting that they did not produce any such records, despite requests for those

documents from the Trustee. In short, there is simply no evidence that any corporate formalities

were observed.

In their response to the Plaintiffs' motion, the Defendants argue that, while there is no

dispute that the veil of the Corporate Defendants can be pierced as to their sole shareholder,

Laura, there is no factual or legal basis for piercing the veil as to a corporate officer—the Debtor

in this matter. The Defendants offer no case law in support of this conclusion.

In fact, contrary to the Defendants' argument, Illinois courts have consistently held that

"lack of shareholder status—and, indeed, lack of status as an officer, director, or

employee—does not preclude veil-piercing." *Buckley v. Abuzir*, 8 N.E.3d 1166, 1176-77 (Ill.

App. Ct. 2014). *See also Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529

F.3d 371, 381 (7th Cir. 2008); *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 778 (Ill. App. Ct.

2005); *Macaluso v. Jenkins*, 420 N.E.2d 251, 256 (Ill. App. Ct. 1981). Rather, the fundamental

question is "whether a person exercises equitable ownership and control over a corporation such

that separate personalities no longer exist." *Buckley*, 8 N.E.3d at 1177. In answering this

question, Illinois courts recognize that "[t]here are many ways to organize a sham corporation, In

some instances, the wrongdoer neither holds stock nor serves in any official capacity. Making

officer, director, or shareholder status a prerequisite to veil-piercing elevates form over substance

and is therefore contrary to veil-piercing's equitable nature." *Id.* at 1177-78.

Under Illinois law, then, the fact that the Debtor was not a shareholder of the Corporate

Defendants does not preclude a finding that the Debtor exercised equitable ownership and control

over the Corporate Defendants such that no separate personalities existed. Thus, the Debtor's

status as a nonshareholder is not a barrier to piercing the corporate veil and bringing the assets of

the Defendants into the Debtor's bankruptcy estate.

The Defendants also argue, again without citation to case law, that the Plaintiffs have no

basis for taking Laura's assets to satisfy the Debtor's liabilities. According to the uncontested

facts in this case, however, Laura, despite owning all shares of the Corporate Defendants, had no

substantial income of her own and delegated all control of the businesses to the Debtor. Under

these circumstances, the fact that Laura was the owner and sole shareholder of the Corporate

Defendants does not operate as a defense to reaching the assets of the Corporate Defendants. *Cf.*

*Arwell Div. of Orkin Exterminating Co. v. Kendrick*, 267 N.E.2d 352, 354 (Ill. App. Ct. 1971)

(concluding that a non-compete covenant in an employment contract could be enforced against a

previous employee's wife who owned a competing business, even though she was technically not

a party to the contract, because she knowingly participated and aided in the violation of the

restrictive covenant and was, in fact, her husband's alter ego).

In sum, the uncontroverted facts establish the "unity of interest and ownership" element. The Debtor controlled the Corporate Defendants with no input from other directors and without arm's length relationships among related entities; assets and funds were considerably commingled; and corporate records and formalities were not maintained. Accordingly, the Court finds that the Debtor exercised a sufficient degree of control over the Defendants such that the first element of the veil-piercing test under Illinois law is satisfied.[7]

## B.    Promotion of Injustice

In order to pierce the corporate veil and find that the Defendants are alter egos of the Debtor, the Plaintiffs must also show that "observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice." *Van Dorn*, 753 F.2d at 570. As to the latter, the Seventh Circuit has noted that although the "promotion of injustice" element requires something less than "an affirmative showing of fraud," it does require something more than the mere prospect of an unsatisfied judgment. *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 522-23 (7th Cir. 1991). In reviewing Illinois cases to determine how the "promote injustice" part of the veil-piercing inquiry has been interpreted, the Seventh Circuit has observed that the corporate veil has been pierced to, among other things, prevent unfair enrichment, *see B. Kreisman & Co. v. First Arlington Nat'l Bank*, 415 N.E.2d 1070, 1073 (Ill. App. Ct. 1980); keep a party from escaping responsibility or ignoring obligations, *see Gromer, Wittenstrom & Meyer, P.C. v. Strom*, 489 N.E.2d 370, 374 (Ill. App. Ct. 1986); and prevent manipulation of corporations to the benefit of one and the detriment of another, *see Van Dorn*, 753 F.2d at 569,

_____

[7] The Defendants do not dispute the application of "reverse" veil-piercing–holding a corporation liable for the debts of a controlling entity–to this matter, and, in fact, Illinois courts recognize this application. *See Scholes v. Lehmann*, 56 F.3d 750, 758 (7th Cir. 1995); *Wachovia Secs., LLC v. Neuhauser*, No. 04 C 3082, 2013 WL 3273816, at *3 (N.D. Ill., June 27, 2013).

572-73. *Sea-Land Servs.*, 941 F.2d at 523-24.

In this matter, the Plaintiffs argue that the uncontested facts establish that the Debtor and the Defendants operated as a single economic unit with a single economic identity. Thus, the Plaintiffs contend, to continue administering the Debtor's bankruptcy case without recognizing that assets nominally titled in the name of the Defendants actually and equitably are part of the Debtor's bankruptcy estate would promote injustice.[8] The Court agrees.

Failure to pierce the corporate veil under the circumstances here would allow the Debtor to shield assets–those that he has both wrongly treated as his own and commingled between and among the Corporate Defendants and himself–from administration and distribution in the bankruptcy case. The result would be to unfairly enrich the Debtor, permitting him to escape financial responsibility and ignore obligations to his creditors, as well as to condone his manipulation of the Corporate Defedants.

The Defendants have offered no basis for the Court to conclude otherwise. They contend only that the denials in their answer create material disputes of fact that preclude entry of judgment in favor of the Plaintiffs. Those denials, however, primarily respond to legal conclusions included in the complaint, not to issues of material fact. And, as discussed at length above, the Defendants' admissions to numerous material facts demonstrate that the relief sought by the Plaintiffs is warranted.

For these reasons, the Court finds that the Defendants are the alter egos of the Debtor and that their corporate veils should be pierced. Once the district court has entered a final judgment

---

[8] The Plaintiffs argue that adherence to the fiction of separate existence under the circumstances in this matter would also sanction a fraud. According to the Plaintiffs, this fraud is evidenced by the "repeated noisy withdrawal" of the Debtor's various attorneys, Laura's "flagrant" violation of court orders compelling her to cooperate with respect to discovery requests, and various tactics that have been employed to delay this case. While these actions are ill-advised and unacceptable, they do not constitute or rise to the level of fraud.

in this matter as to the alter ego and veil-piercing issues, the bankruptcy court will address the

Plaintiffs' request for turnover under § 542 as appropriate.

## CONCLUSION

For the foregoing reasons, the Court recommends that the district court grant the

Plaintiffs' motion for judgment on the pleadings with respect to alter ego and piercing the

corporate veil.  This constitutes the Court's proposed findings of fact and conclusions of law in

accordance with Federal Rule of Bankruptcy Procedure 9033.

**Dated:** 9/15 |15

**ENTERED:**

Janet S. Baer
United States Bankruptcy Judge